[Docket Nos. 168, 175.]

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY
# CAMDEN VICINAGE

| | |
|---|---|
| BARBARA MCLAREN and VINCENT TRIPICCHIO, on behalf of themselves and all others similarly situated, | |
| Plaintiffs, | Civil No. 21-14424 (RMB/MJS) |
| v. | |
| THE UPS STORE, INC., *et al.*, | **OPINION** |
| Defendants. | |

**RENÉE MARIE BUMB, Chief United States District Judge:**

This lawsuit is about overcharging for notary fees. Plaintiff Barbara McLaren claims Defendant RK & SP Services, LLC (RKSP) overcharged her notary fees when she had certain documents notarized at The UPS Store, Inc. (TUPSS) franchise operated by RKSP. At the time of the alleged overcharges, RKSP was selling its assets and transferring its TUPSS franchise to Defendant Hamilton Pack N Ship LLC (Pack N Ship). McLaren seeks to hold Pack N Ship liable for the overcharges based on successor liability.

Pack N Ship moves for summary judgment, arguing New Jersey's non-successor liability rule precludes any liability from McLaren's claims. [Docket No. 168.] Pack N Ship asserts that it merely purchased RKSP's assets and started operating a TUPSS franchise—nothing more. Pack N Ship explains that under New Jersey law, a company that does so is not liable for the selling-company's debts and liabilities. McLaren counters, arguing the mere continuation exception to New Jersey's non-successor liability rule allows successor liability here based on several factors, such as continuity of business operations, personnel, operating

location, and so on. McLaren argues that a reasonable factfinder could find Pack N Ship to be a mere continuation of RKSP.

For the reasons below, this Court agrees with McLaren. Viewing the facts in McLaren's favor and giving her the benefit of all reasonable inferences (as this Court must do at this stage), a reasonable factfinder could find Pack N Ship to be a mere continuation of RKSP. To be sure, some factors courts must consider to determine whether the mere continuation exception to New Jersey's non-successor liability rule applies are present; others are not. Because the mere continuation exception turns on parties' intent, which will require factfinding and credibility determinations, the Court must deny Pack N Ship's summary judgment motion. A factfinder will have to determine whether Pack N Ship is a mere continuation of RKSP for successor liability to attach.

## I. BACKGROUND

### A. The Sale

John Pellizzari and his wife own Pack N Ship. [Def.'s Statement of Material Facts in Supp. of Mot. for Summ. J. ¶ 2 (DSOMF) (Docket No. 168-2).] Following his retirement from banking, Pellizzari became interested in starting a TUPSS franchise. [*Id.* ¶ 2.] He learned that a TUPSS franchise in Hamilton Square, New Jersey, was up for sale. [*Id.* ¶ 4.] RKSP, owned by Bharat Patel and Hitesh Shah, operated the Hamilton Square The UPS Store; it was called The UPS Store #4122. [*Id.* ¶ 2; *see also* Pl.'s Statement of Material Facts in Opp'n to Def.'s Mot. for Summ. J. ¶ 2 (PSOMF) (Docket No. 170-1).] For an existing franchisee to sell and transfer its interest in a TUPSS franchise to a new franchisee, TUPSS, the existing franchisee, and the new franchisee must execute a "Consent to Transfer." [DSOMF ¶ 5.]

2

In March 2019, Patel, as RKSP's managing member, contracted with Pellizzari to sell RKSP's assets (the Agreement). [*Id.* ¶ 5.] By the Agreement, Pellizzari paid $200,000 for RKSP's fixed assets (like point-of-sale systems, printers, computers, copiers, and so on), any customer lists, and "the goodwill associated" with RKSP's operation of The UPS Store #4122. [Decl. of John Pellizzari ¶ 4, Ex. A (Pellizzari Decl.) (Docket Nos. 168-5, -6).] Certain assets—like RKSP's cash, checking accounts, investments, rights under insurance policies, and the like—were not up for sale. [*Id.*] Apart from agreeing to take over leases for two copiers and executing a lease assignment or new lease with the property owner, Pellizzari did not assume any of RKSP's liabilities. [*Id.*; *see also* DSOMF ¶ 6; Pl.'s Resp. to Def.'s Statement of Material Facts in Supp. of Mot. for Summ. J. ¶ 6 (Pl.'s Resp.) (Docket No. 170-2).] In fact, under the Agreement, RKSP would pay all accounts payable for its TUPSS store and "other bills owed and incurred" before the Agreement's closing. [Pellizzari Decl. ¶ 4, Ex. A.] The Agreement did not require Pellizzari to hire any RKSP past or current employees, or any RKSP member. [*Id.*] Rather, RKSP agreed to "cooperate with" Pellizzari's "efforts to employ" RKSP's past or current at-will employees. [*Id.*] RKSP agreed to provide on-site training for two weeks "as needed" and be available by phone for assistance for a limited two-month period with a five-hour cap each month. [*Id.*]

After signing the Agreement, Pack N Ship filed its New Jersey Certificate of Formation. [PSOMF ¶ 9.] Pack N Ship then filed a Certificate of Alternative Name to use "The UPS Store 4122" name. [*Id.*] Pack N Ship and RKSP then signed the Consent to Transfer. [Pellizzari Decl. ¶ 5, Ex. B.]

A few months after executing the Agreement, Pellizzari and his wife, on behalf of Pack N Ship, executed a franchise agreement with TUPSS authorizing Pack N Ship to operate The

UPS Store #4122. [DSOMF ¶ 7; Pl.'s Resp. ¶ 7; Pellizzari Decl. ¶ 5, Exs. B, C (Docket Nos. 168-7, -8).] TUPSS executed the Consent to Transfer on September 4, 2019. [Pellizzari Decl. ¶ 5, Ex. C.]

After TUPSS executed the Consent to Transfer, Pack N Ship operated The UPS Store #4122. [PSOMF ¶ 12.] Pack N Ship retained two former RKSP employees to work as store clerks; both also served as notaries. [*Id*. ¶ 13.] Pack N Ship used the existing point-of-sale systems (cash registers) in The UPS Store #4122. [*Id.*] That system already had the notary pricing template preloaded, so Pack N Ship continued to use those prices. [*Id.* n. 25.]

In June 2020, RKSP filed a Certification of Dissolution and Termination with the New Jersey Department of Treasury. [*Id.* ¶ 14.] In doing so, Patel, as an RKSP member, represented that "[a]ll assets have been discarded and have been applied to creditors or distributed to its members." [Decl. of Kent Bronson, Esq. ¶ 10, Ex. G. (Bronson Decl.) (Docket Nos. 170-4, -11).] Apart from that certification, the record does not reveal what, if anything, RKSP did after TUPSS signed the Consent to Transfer in September 2019.

B. The Notary Fee Overcharge and the Class Action

Meanwhile, in August 2019, Plaintiff Barbara McLaren went to The UPS Store #4122, which was still owned by RKSP at the time, to have two documents notarized. [DSOMF ¶ 2.] She paid $10 in notary fees. [*Id.*] McLaren claims RKSP overcharged her $5 for the notary services. [Consol. Class Action Compl. (CAC) ¶ 266 (Docket No. 158).] When McLaren paid for those notary services, New Jersey law controlled how much notaries public could charge for notary services, depending on the document to be notarized. 2002 N.J. Laws, ch. 34, § 48 (effective July 1, 2002) (codified at N.J. Stat. Ann. § 22A:4-14).[1] At that

---

[1] In 2021, New Jersey Legislature passed the "New Jersey Law on Notarial Acts" amending several laws, including the fees notaries public may charge. 2021 N.J. Laws, ch. 179 (effective Oct. 20, 2021). The Legislature

time, New Jersey law capped the notary fee at $2.50 for the types of documents that McLaren had notarized.[2] *Id.*

McLaren, along with Plaintiff Vincent Tripicchio, filed this putative class action against, among others, TUPSS, RKSP, and Pack N Ship claiming they violated, among other things, the New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8-1, *et seq.*, and the Truth-in-Consumer Contract, Warranty, and Notice Act, N.J. Stat. Ann. § 56:12-14, *et seq.*, for overcharging notary fees.[3]  [*See generally* CAC.]  Even though RKSP operated The UPS Store #4122 when McLaren was overcharged for notary services, she seeks to hold Pack N Ship liable for those overcharges based on successor liability principles.  [*Id.* ¶¶ 258-63.]

**C. Pack N Ship's Summary Judgment Motion**

Pack N Ship now moves for summary judgment, arguing it is not liable for the overcharges McLaren incurred at The UPS Store #4122.  [Def.'s Mem. of Law in Supp. of Summ. J. 4-8 (Def.'s Br.) (Docket No. 168-1).]  Pack N Ship contends that under New Jersey law, when a company purchases another company's assets—as it did here with RKSP's assets—then the purchasing company is not liable "for the debts and liabilities of the [selling-company], including those arising out of the [seller's] tortious conduct."  [*Id.* at 4 (quoting *Ramirez v. Amsted Indus., Inc.*, 431 A.2d 811, 815 (N.J. 1981)).]  Since Pack N Ship only bought RKSP's assets and did not affirmatively assume RKSP's liabilities, Pack N Ship is not liable to McLaren.

---

removed the fee schedule in the statute, and authorized the State Treasurer to set the fee "by regulation."  N.J. Stat. Ann. § 22A:4-14.
[2] New Jersey law allowed notaries public to charge a higher fee for documents relating to real estate transactions or mortgages for real estate financing.  L. 2002, c. 34, § 48 (effective July 1, 2002) (codified at N.J. Stat. Ann. § 22A:4-14).
[3] This case has a protracted procedural history that the Court need not recount to resolve the pending motion.

5

And Pack N Ship argues no exception to that successor liability rule applies here, such as the mere continuation exception that McLaren relies on. [*Id.* at 5-8.] Pointing to the New Jersey Supreme Court's decision in *Ramirez*, Pack N Ship argues that the mere continuation exception requires a showing of "commonality of corporate management or ownership" before a purchasing company can be found to be a continuation of the seller's company. [*Id.* at 5 (quoting *Ramirez*, 431 A.2d at 816).] Pack N Ship asserts that the required commonality of management or ownership is lacking here because RKSP members (Patel and Shah): (1) have no ownership interest in Pack N Ship; (2) are not part of Pack N Ship's management; and (3) had no involvement in operating The UPS Store #4122 after the assets sale. [*Id.* at 7.]

Pack N Ship adds that McLaren's reliance on the New Jersey Appellate Division's decision in *Woodrick v. Jack J. Burke Real Est., Inc.*, 703 A.2d 306 (N.J. Super. Ct. App. Div. 1997) is misplaced for a few reasons. [Def.'s Reply Mem. of Law in Supp. of Summ. J. 1-9 (Def.'s Reply Br.) (Docket No. 172).] First, *Woodrick*—a decision from an intermediate appellate court—cannot change *Ramirez*' rule on the mere continuation exception. [*Id.* at 1-2.] So, *Ramirez*' requirement of commonality of corporate management or ownership still controls. [*Id.*] Second, *Ramirez* never looked to any of the factors referenced in *Woodrick* to determine whether the mere continuation exception applies. [*Id.* at 6.] Even so, Pack N Ship contends those factors confirm that it is not a mere continuation of RKSP. [*Id.* at 6-7.] Lastly, Pack N Ship argues that McLaren's relied-on cases that supposedly applied those factors confirm that there must at least be commonality of management for the mere continuation exception to apply, which is lacking here. [*Id.* at 4-5 (collecting cases).]

McLaren resists summary judgment, arguing Pack N Ship is wrong on the law by taking a stingy approach to the mere continuation exception to successor liability. [Pl.'s Mem.

of Law in Opp'n to Def.'s Mot. for Summ. J. 10-15 (Pl.'s Opp'n Br.) (Docket No. 170).] Pointing to *Woodrick*, McLaren argues that corporate buyers cannot avoid successor liability by "simply structuring a cash-for-assets sale[]" like Pack N Ship did here. [*Id*. at 10 (quoting *Woodrick*, 703 A.2d at 313).] McLaren argues that Pack N Ship wrongly interprets *Ramirez* because New Jersey courts (federal and state) have deemphasized the need to prove continuity of ownership to trigger the mere continuation exception. [*Id.* at 12.] McLaren explains that whether Pack N Ship is a mere continuation of RKSP depends on several factors, including the continuity of general business operations, management, personnel, location between the companies, whether the seller dissolved after the asset sale, whether the buyer assumed the seller's obligations to ensure uninterrupted business operation, and so on. [*Id.* at 11.]

And looking to those factors, McLaren argues a reasonable factfinder could find Pack N Ship is a mere continuation of RKSP, and as such, summary judgment is improper. [*Id.* at 15-20.] For example, McLaren points out that Pack N Ship continued to operate a TUPSS franchise with the same "d/b/a" as RKSP, from the same location, used the same prices, and employed former RKSP employees. [*Id.* at 16-17.] McLaren also explains there was no interruption in the business. [*Id.* at 17.] So there's evidence of continuity between Pack N Ship and RKSP. [*Id.* at 17-18.] And McLaren argues that RKSP stopped doing business and dissolved shortly after the assets-sale. [*Id.* at 19.] She also asserts that Pack N Ship assumed some of RKSP's obligations, like agreeing to: (1) sign a new franchise agreement with TUPSS; (2) execute a new lease or a lease assignment with the landowner for the storefront, and (3) assume leases for certain equipment. [*Id.* at 19-20.] McLaren contends that the above evidence—taken as a whole—shows Pack N Ship is a mere continuation of RKSP to trigger successor liability. [*Id.* at 20.]

7

## II. DISCUSSION

### A. Legal Standard

Courts must grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it might impact the "outcome of the suit under the governing law." *Gonzalez v. Sec'y of Dep't of Homeland Sec.*, 678 F.3d 254, 261 (3d Cir. 2012). A dispute is "genuine" if the evidence would allow a reasonable jury to find for the nonmoving party. *Id.* To prevail on a summary judgment motion, the moving party must show the nonmovant cannot establish one or more essential elements of its case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). And if the nonmoving party "'fails to make a showing sufficient to establish the existence of an element essential to [its] case, and on which [it] will bear the burden of proof at trial,' then summary judgment is appropriate for the moving party." *SodexoMAGIC, LLC v. Drexel Univ.*, 24 F.4th 183, 204 (3d Cir. 2022) (alterations in original) (quoting *Celotex*, 477 U.S. at 322).

### B. Successor Liability Law

Under New Jersey law, when a company buys another company's assets, the purchasing-company is not liable for selling-company's debts and liabilities. *Ramirez*, 431 A.2d at 815; *accord Luxliner P.L. Exp., Co. v. RDI/Luxliner, Inc.*, 13 F.3d 69, 73 (3d Cir. 1993) (applying New Jersey law). This non-successor liability rule has several exceptions. *Ramirez*, 431 A.2d at 815 (discussing exceptions); *see also Woodrick*, 703 A.2d at 312 (same). This case concerns the mere continuation exception.[4] [CAC ¶¶ 258-63.] That exception turns on

---

[4] The mere continuation and de facto merger exceptions "tend to overlap," and as such, court treat those exceptions "in unison." *Woodrick*, 703 A.2d at 312; *accord Luxliner*, 13 F.3d at 73.

8

whether "the purchaser is merely a restructured or reorganized form of the seller." *Berg Chilling Sys., Inc. v. Hull Corp.*, 435 F.3d 455, 468 (3d Cir. 2006) (Alito, J.). It imposes successor liability on the purchaser "to prevent a situation whereby the specific purpose of acquiring assets is to place those assets out of reach of the [seller's] creditors." 15 Fletcher Cyclopedia of the Law of Corporations § 7124.10 (Sept. 2024 update); *accord United States v. Gen. Battery Corp.*, 423 F.3d 294, 306 (3d Cir. 2005) ("The overriding goal of successor liability . . . is to balance the interest in preventing tortfeasors from externalizing the costs of their misconduct with the interest in a fluid market in corporate assets." (citation and internal quotation marks omitted)).

New Jersey courts examine many factors to determine whether a purchaser is a mere continuation of the seller, including: (1) continuity of management, personnel, physical location, assets, and general business operations between the companies; (2) the seller ceases ordinary business and dissolves as soon as practically and legally possible; (3) the buyer assumes the seller's liabilities that are necessary to continue the business without interruption; and (4) continuity of ownership/shareholders between the companies. *See, e.g.*, *Thompson v. Real Est. Mortg. Network,* 748 F.3d 142, 150 (3d Cir. 2014) (summarizing New Jersey law on the mere continuation exception) (quoting *Marshak v. Treadwell*, 595 F.3d 478, 490 (3d Cir. 2009)); *see also Luxliner,* 13 F.3d at 73; *accord Woodrick*, 703 A.2d at 312; *see generally* Fletcher, *supra*, § 7124.10. Courts also examine whether the purchaser "intend[ed] to incorporate [the seller] into its system with as much the same structure and operation as possible." *Thompson*, 748 F.3d at 150 (second alteration in original) (quoting *Marshak*, 595 F.3d at 490).

A party seeking to impose successor liability need not establish every factor to show that a mere continuation has occurred. *Luxliner,* 13 F.3d at 73; *see also Pub. Serv. Elec. & Gas*

9

*Co. v. Cooper Indus., LLC*, 678 F. Supp. 3d 611, 622 (D.N.J. 2023) (*PSE&G*).  Instead, "[t]he crucial inquiry is whether there was an 'intent on the part of the contracting parties to effectuate a merger or consolidation rather than a sale of assets.'"  *Luxliner,* 13 F.3d at 73 (quoting *McKee v. Harris-Seybold Co., Div. of Harris-Intertype Corp.*, 264 A.2d 98, 104 (N.J. Super. Ct. Law. Div. 1970), *aff'd*, 288 A.2d 585 (N.J. Super. Ct. App. Div. 1972), *abrogated on other grounds by Ramirez*, 431 A.2d at 824-25)).  Said another way, "continuity exists where the successor becomes merely a 'new hat' for the predecessor*." Fink v. EdgeLink, Inc.*, 553 F. App'x 189, 193 (3d Cir. 2014) (quoting *Woodrick*, 703 A.2d at 312); *see also Marshak*, 595 F.3d at 490 (explaining "court[s] should consider whether 'the purchaser holds itself out to the world as the effective continuation of the seller'" (quoting *Bowen Eng'g v. Est. of Reeve*, 799 F. Supp. 467, 488 (D.N.J. 1992), *aff'd*, 19 F.3d 642 (3d Cir. 1994))).

Pack N Ship asserts this Court need not look to the above factors to determine whether it is a mere continuation of RKSP because *Ramirez* never discussed them.  [Def.'s Reply Br. at 6.]  And pointing to *Ramirez*, Pack N Ship contends McLaren cannot satisfy the mere continuation exception since there's no evidence of common ownership or management between the companies.  [Def.'s Br. at 5.]  Pack N Ship misreads *Ramirez* and downplays New Jersey caselaw on the mere continuation exception.

In *Ramirez*, the New Jersey Supreme Court addressed successor liability in the products liability context—that is, a company manufactures a product, that company either merges with or sells all its assets to another company, the product later injures someone, and the injured party is looking to hold the merged company or purchasing-company liable.  Before *Ramirez*, a New Jersey trial court decision called *McKee* governed successor liability in the products liability context.  *Ramirez*, 431 A.2d at 815 (explaining *McKee* "is presently

10

recognized as the seminal New Jersey case on corporate successor liability in the products context"). *Ramirez* examined *McKee* and the traditional exceptions to the non-successor liability rule, including the mere continuation exception, and found them unworkable in the products context. *Id.* at 816-817. The *Ramirez* court found that *McKee* "place[d] unwarranted emphasis on the form rather than the practical effect of a particular corporate transaction." *Id.* at 816. Looking to the mere continuation exception discussed in *McKee*, the *Ramirez* court explained that the:

> exception causes liability vel non to depend on whether the plaintiff is able to establish that there is continuity in management, shareholders, personnel, physical location, assets and general business operation between selling and purchasing corporations following the asset acquisition. . . . Where the commonality of corporate management or ownership cannot be shown, there is deemed to have been no continuation of the seller's corporate entity.

*Id.* at 816 (citations omitted).

*Ramirez* refused to apply *McKee*'s formulation of the mere continuation exception and looked to other jurisdictions' application of that exception in the products context. *Id.* at 816-19. *Ramirez* examined, among other cases, the Michigan Supreme Court's decision in *Turner v. Bituminous Cas. Co.*, 244 N.W.2d 873 (Mich. 1976). *Id.* at 817-18. *Turner* modified the mere continuation exception in the products context to remove the continuity of shareholders requirement when assets are purchased for cash. 244 N.W.2d at 883. While *Ramirez* found that *Turner* "merely broaden[ed] the inroads into traditional principles of corporate successor non-liability expressed in *McKee*[,]" 431 A.2d at 819, New Jersey's highest court ultimately charted a new course for successor liability in the products context by adopting a "products line" exception, *id.* at 824-25. In doing so, *Ramirez* held that *McKee*'s approach to successor liability no longer applies in product liability cases. *Id.*

11

Following *Ramirez*, New Jersey's Appellate Division decided *Woodrick*. There, the appellate court had to determine whether the mere continuation and de facto merger exceptions to the non-successor liability rule applied in a non-products case. 703 A.2d at 312-14. *Woodrick* examined *McKee* and observed how other trial courts "criticized" that decision "as too narrow" and noted many federal courts applying New Jersey law have found that "continuity of shareholder investment is no longer viewed as being dispositive of the issue of de facto merger or continuation." *Id.* at 313.

And looking to *Ramirez*, *Woodrick* explained that "the more modern view of New Jersey law" on the mere continuation and de facto merger exceptions "no longer requir[es] continuity of shareholder interest." *Id*. *Woodrick* also noted *Ramirez*' "apparent approval" of *Turner*'s reasoning "that there was no practical basis for treating a cash purchase of corporate assets any differently than acquisition of assets for stock . . . ." *Id.* (quoting *Ramirez*, 431 A.2d at 818). While recognizing New Jersey's Supreme Court had not directly addressed successor liability in the cash-for-assets context, *Woodrick* found that "a corporate successor can no longer avoid liability by simply structuring a cash-for-assets sale." *Id.* That said, *Woodrick* explained that the "critical inquiry" for the mere continuation exception focuses on whether the purchaser and seller "inten[ded] . . . to effectuate a merger or consolidation rather than a sale of assets." *Id.* at 312 (quoting *Glynwed, Inc. v. Plastimatic, Inc.*, 869 F. Supp. 265, 275-76 (D.N.J. 1994)).

The Third Circuit and courts in this District have recognized that New Jersey has deemphasized the need to show continuity of shareholder interest to trigger the mere continuation exception. *See, e.g.*, *PSE&G*, 678 F. Supp. 3d at 622 (explaining "continuity of stock ownership is no longer considered a prerequisite under the *de facto* merger/mere

12

continuation test"). For instance, then-Judge Alito, writing for the Third Circuit, addressed a choice-of-law conflict between New Jersey and Pennsylvania law on successor liability. *Berg*, 435 F.3d at 463. In doing so, Judge Alito noted the differences in the States' laws: Pennsylvania required continuity in shareholders between the predecessor and successor while New Jersey did not. *Id.* at 462-63. Judge Alito explained that New Jersey "courts have adopted a broader standard of successor liability that deemphasizes continuity of shareholder interest." *Id.* at 462 (citing *Woodrick*, 703 A.2d at 312-314). Judge Alito noted that New Jersey law "elevates the intent of the contracting parties to primary importance." *Id.*; *see also Gen. Battery*, 423 F.3d at 301 n.5 (noting New Jersey does not "emphasize 'continuity of ownership' as a key element of successor liability").

Against that backdrop, Pack N Ship's all-or-nothing approach to *Ramirez* and the mere continuation exception fails. First, *Ramirez* never applied the mere continuation exception so *Ramirez* is not controlling here. Second, the language that Pack N Ship clings to from *Ramirez* about the mere continuation exception is only a summary of *McKee*'s treatment of that exception. 431 A.2d at 816. *Ramirez* and *Woodrick* both criticized *McKee*'s approach as too narrow. *Ramirez*, 431 A.2d at 816; *Woodrick*, 703 A.2d at 312-13. And despite Pack N Ship's contrary argument, *Ramirez*, in fact, discussed several factors courts look to determine whether a corporate continuation has occurred. *Ramirez*, 431 A.2d at 816; *see also Potwora ex rel. Gray v. Grip*, 725 A.2d 697, 707 (App. Div. 1999) (explaining *Ramirez* "summed up the business continuation exception" and listing factors courts must consider). Those are the same factors that McLaren points to here. [Pl.'s Opp'n Br. at 11-20.] Third, after *Ramirez*, New Jersey courts (federal and state) have recognized that continuity of shareholders or ownership is not crucial to trigger the mere continuation exception. *Berg*, 435 F.3d at 462-63;

13

*Gen. Battery*, 423 F.3d at 301 n.5; *PSE&G*, 678 F. Supp. 3d at 622; *Woodrick*, 703 A.2d at 313. Instead, the contracting parties' intent controls. *Luxliner,* 13 F.3d at 73; *Berg*, 435 F.3d at 462-63; *Woodrick*, 703 A.2d at 312.

Accordingly, this Court must determine whether Pack N Ship intended to merge or consolidate with RKSP. *Luxliner,* 13 F.3d at 73. And New Jersey caselaw requires courts to examine several factors to determine that intent. *Id.*; *see also Thompson*, 748 F.3d at 150; *Woodrick*, 703 A.2d at 312. Not one factor—like continuity of management or ownership as Pack N Ship claims—controls. *Luxliner,* 13 F.3d at 73.

### C. Is Pack N Ship a Mere Continuation of RKSP?

#### 1. Continuity of Management, Personnel, Assets, Physical Location, Business Operation

To start, a reasonable factfinder could find some continuity between Pack N Ship and RKSP. Indeed, there is continuity of personnel, assets and physical location between Pack N Ship and RKSP. Pack N Ship bought RKSP's assets to operate a TUPSS franchise, retained two RKSP at-will employees who were store clerks, and used the name The UPS Store #4122 like RKSP did. [PSOMF ¶¶ 12-13; DSOMF ¶ 6.] There is no dispute that Pack N Ship continued to operate the store from the same location that RKSP had used, using the same assets. [*Id.*] And all agree that Pack N Ship continued in the same business as RKSP did: the operation of a TUPSS franchise. [DSOMF ¶¶ 1, 4, 8-9; Pl.'s Resp. ¶¶ 1, 4, 8-9.] Thus, some continuity exists.

Yet evidence of continuity of management is lacking. RKSP's principals, Patel and Shah, did not become part of Pack N Ship's management and Pack N Ship never employed them. [DSOMF ¶ 8; Pl.'s Resp. ¶ 8.] While RKSP agreed to provide training and be available for a limited time to help Pack N Ship learn the business, Pl.'s Resp. ¶ 8, those facts are not

14

enough to show Pack N Ship is a mere continuation of RKSP. *See Menacho v. Adamson United Co.*, 420 F. Supp. 128, 134 (D.N.J. 1976) (refusing to find *de facto* merger where, among other things, there was no evidence of continuity of management or control, reasoning that retaining predecessor employees was necessary "to help the new corporation learn the business upon which it was about to embark" and those retained employees "did not control or maintain the control of the [predecessor]"). Said another way, there is no evidence that Pack N Ship incorporated RKSP's principals into Pack N Ship's structure and operation. *Thompson*, 748 F.3d at 150.

What's more, the RKSP employees that Pack N Ship retained were only store clerks. McLaren offers no evidence that those clerks had any authority to control RKSP or bind the company. *See Berg*, 435 F.3d at 469-70 (refusing to find *de facto* merger where, among other things, "[t]here was no continuity of corporate management" where no member of selling-company's board of directors became a member of purchasing-company's board of directors, and where retained upper-management employees "had no authority to bind the purchasing-company"); *see also Menacho*, 420 F. Supp. at 134 (finding it "crucial" that the retained employees "did not control or maintain control of the predecessor"); *cf. Gen. Battery*, 423 F.3d at 306 (finding *de facto* merger because the purchasing-company "continued" the selling-company's "enterprise" where purchaser continued to employ senior executives who "remained active in supervising [manufacturing] plant").

That aside, while the continuity of management is lacking, a reasonable factfinder could still find successor liability based on the other continuity factors. *See Marshak*, 595 F.3d at 490 (affirming successor liability finding even where the "changes in ownership and management" factors "weighed against" successor liability because other factors supported

15

finding successor liability since "the personnel of each business were the same, the location of each business was the same, the assets of each business were the same, the general operations of each business were the same, and [predecessor] folded shortly after [successor] was formed"). Indeed, given the continuity of personnel, name, location, and business-line, a reasonable factfinder could find that Pack N Ship held "itself out to the world as the effective continuation of" RKSP. *Id.* (quoting *Bowen*, 799 F. Supp. at 488).

### 2. Cessation of Business and Dissolution of Predecessor

A reasonable factfinder could find the cessation of business and dissolution of predecessor factor points to successor liability. About a year after Pack N Ship, RKSP, and TUPSS executed the Consent to Transfer, *see* DSOMF ¶ 7, Pl.'s Resp. ¶ 7, RKSP formally dissolved, *see* Bronson Decl. ¶ 10, Ex. G. Nothing in the record suggests RKSP continued any business operations between signing the Consent to Transfer and filing the Certification of Dissolution and Termination.[5] Indeed, the record suggests RKSP was a barren company following the asset sale and wound up its affairs until it formally dissolved. [*See* Bronson Decl. ¶ 10, Ex. G.] Because the record reveals that RKSP ceased operations and dissolved "as soon as practically and legally possible[,]" *Woodrick*, 703 A.2d at 312 (citation omitted), a reasonable factfinder could find this factor supports successor liability. *See PSE&G*, 678 F.

---

[5] Pack N Ship contends McLaren has no evidence as to what RKSP did after the Consent to Transfer closed, and the Certification of Dissolution and Termination is inadmissible hearsay. [Def.'s Resp. to Pl.'s Statement of Material Facts in Opp'n. to Def.'s Mot. for Summ. J. ¶ 14 (Docket No. 172-1).] This Court does not need to resolve whether the Certification will ultimately be admissible at trial. *Roofer's Pension Fund v. Papa*, 687 F. Supp. 3d 604, 630 (D.N.J. 2023). Rather, this Court need only "determine if [McLaren] can produce admissible evidence regarding a disputed issue of material fact at trial." *Fraternal Ord. of Police, Lodge 1 v. City of Camden*, 842 F.3d 231, 238 (3d Cir. 2016). Based on the record, this Court does not see any obstacles for McLaren to overcome that hurdle. For instance, the Certification may fall within the business records hearsay exception, Fed. R. Evid. 801(6), or the residual exception, Fed. R. Evid. 807. In addition, Patel, who signed the Certification on RKSP's behalf, appears to be an active participant in this litigation since he signed many of RKSP's discovery responses. [Notice of Removal, Ex. A, pp. 521-534 (Docket No. 1-3).] Given his participation in discovery, the Court sees no reason why McLaren could not call Patel as a witness to testify at trial to authenticate the Certification and provide the evidentiary foundation.

Supp. 3d at 625 (finding cessation of business and dissolution of predecessor factor weighed in favor of successor liability even though predecessor did not formally dissolve for decades after asset purchase agreement where record showed that "following the acquisition, [predecessor] was nothing more than a barren, corporate shell"). Indeed, "the essential characteristic" of the mere continuation and de facto merger exceptions to the non-successor liability rule "is that one corporation survives while another ceases to exist." *Gen. Battery*, 423 F.3d at 308.

### 3. Assumption of Predecessor's Liabilities Needed for Uninterrupted Business Operations

For starters, nothing in the Agreement expressly required Pack N Ship to assume RKSP's liabilities needed for uninterrupted operations. Indeed, in the Agreement, RKSP represented that it has, or would, pay off accounts payable and "other bills owed and incurred" before the asset sale's closing. [Pellizzari Decl. ¶ 4, Ex. A.] Courts that have applied the mere continuation exception have done so where the parties' agreement explicitly required the purchaser to assume the seller's liabilities. *See, e.g.*, *PSE&G*, 678 F. Supp. 3d at 624; *accord Woodrick*, 703 A.2d at 310, 314. So the assumption of liability factor appears lacking.

Yet some fixed assets that Pack N Ship agreed to purchase were leased, such as two copiers. In the Agreement, Pack N Ship agreed to assume the leases for those copiers. [Pellizzari Decl. ¶ 4, Ex. A.] Given that a TUPSS franchise offers, among other things, printing and copying services, *see* DSOMF ¶ 9, Pack N Ship's assumption of the copiers' leases would be necessary for uninterrupted business operations. In addition, Pack N Ship agreed to either take an assignment of RKSP's lease for the commercial property or execute a new lease with the landlord. [Pellizzari Decl. ¶ 4, Ex. A.] Therefore, a reasonable factfinder could

17

find that Pack N Ship assumed some of RKSP's liabilities needed for uninterrupted business operations, which could weigh in favor of successor liability.

### 4. Commonality of Shareholder/Ownership Interests

Lastly, a reasonable factfinder could find the commonality of shareholder/ownership factor weighs against successor liability. But New Jersey courts have deemphasized the need to show commonality of shareholder or ownership interests. *Berg*, 435 F.3d at 462-63; *see also Gen. Battery*, 423 F.3d at 301 n.5. So this factor's absence may not defeat successor liability. *See PSE&G*, 678 F. Supp. 3d at 622-26 (finding successor liability even where there was no continuity of shareholder interests).

\* \* \*

In the end, then, several factors triggering the mere continuation exception to New Jersey's non-successor liability rule are present; others are lacking. But the mere continuation exception can apply even when some factors are missing. *Luxliner,* 13 F.3d at 73. Indeed, this exception ultimately turns on whether the contracting parties intended "to effectuate a merger or consolidation rather than a sale of assets[,]" *Woodrick*, 703 A.2d at 312 (citation and internal quotation marks omitted), and "the facts which underlie [that] inquiry affect the determination of the parties' intent[,]" *Luxliner,* 13 F.3d at 75 n.6. Viewing the evidence in McLaren's favor and giving her the benefit of all reasonable inferences (as this Court must do at this stage, *Hugh v. Butler Cnty. Fam. YMCA*, 418 F.3d 265, 267 (3d Cir. 2005)), McLaren has proffered enough evidence for a reasonable factfinder to conclude that Pack N Ship is a mere continuation of RKSP at this time. *See Marshak*, 595 F.3d at 490; *see also Luxliner,* 13 F.3d at 74-76 (remanding for an evidentiary hearing to determine whether the mere continuation exception applied when some factors were present and others were not,

reasoning that the parties' explanations on the reasoning for the transaction and the evidence of continuity required the court to make credibility determinations). This is not to say, however, that McLaren will prevail. Indeed, a factfinder may very well conclude that RKSP and Pack N Ship did not intend to merge or consolidate, *see Woodrick*, 703 A.2d at 312, which would defeat McLaren's successor liability claim. But because McLaren has proffered enough evidence "to enable a jury to reasonably find for" her on successor liability, *Renchenski v. Williams*, 622 F.3d 315, 324 (3d Cir. 2010) (citation and internal quotation marks omitted), summary judgment is inappropriate at this stage.

## III. CONCLUSION

For the above reasons, the Court **DENIES** Defendant Hamilton Pack N Ship LLC's Summary Judgment Motion (Docket No. 168).[6] An accompanying Order of today's date shall issue.

**s/Renée Marie Bumb**
RENÉE MARIE BUMB
Chief United States District Judge

Dated: October 16, 2025

---

[6] Plaintiff Barbara McLaren has also moved to strike Defendant Hamilton Pack N Ship LLC's Responses to Plaintiff's Statement of Material Facts in Opposition to Defendant's Summary Judgment Motion. [Docket No. 175.] Because this Court is denying Defendant's Summary Judgment Motion, this Court will deny as moot Plaintiff's Motion to Strike.